

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SUPREME LAUNDRY SERVICE, LLC, | |
| Plaintiff, | |
| v. | No. 06 C 4475<br>Judge James B. Zagel |
| HARTFORD CASUALTY INSURANCE COMPANY, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

This is an insurance coverage dispute in which Supreme Laundry Service, LLC ("Supreme") seeks damages based on Hartford Casualty Insurance Company's ("Hartford") failure to defend Supreme. Currently before me are cross-motions for judgment on the pleadings.

## I. BACKGROUND

Supreme asserts that Hartford's duty to defend arose with respect to Coinmatch Corp.'s ("Coinmatch") Counterclaim and Amended Counterclaim against Supreme in *Supreme Laundry Service, LLC v. Coinmatch and Hinsdale Point Condominium Association* ("Underlying Lawsuit"), which was filed in the Circuit Court of Cook County.

### A. *The Insurance Policies*

Supreme's policy ("CGL Policy") states, in part:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

> b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

The Policy states that "Personal and advertising injury:"

> ... means injury, including consequential "bodily injury," arising out of one or more of the following offenses . . .
>
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor...

The CGL Policy contains the following exclusion:

> This insurance does not apply to:
>
> a. "Personal and advertising injury:"
>
>> (7) Arising out of any breach of contract , except an implied contract to use another's "advertising idea in your "advertisement;"

Hartford also issued an umbrella policy to Supreme ("Umbrella Policy"), which states:

> We will pay those sums that the "insured" must legally pay as "damages" in excess of the "underlying insurance," or of the "self-insured retention" when no "underlying insurance" applies, because of "bodily injury," "property damage," "personal injury," or "advertising injury" to which this insurance applies caused by an "occurrence."

The CGL Policy is the "underlying insurance" noted in the Umbrella Policy. In addition, the Umbrella Policy defines "personal injury" in the same way as the CGL Policy does.

*B.    The Underlying Lawsuit*

Supreme installs and maintains commercial laundry equipment in premises it leases in condominium and multi-unit apartment buildings. Supreme filed the Underlying Lawsuit in 2001, seeking a declaration that a certain lease dated June 26, 2000, between Supreme and the Hinsdale Point Condominium Association ("Association")—pursuant to which Supreme had

2

installed laundry machines on the Association's premises—was still in full force and effect. Supreme sought a further declaration that the Association had terminated Coinmatch's lease on May 4, 2000. Coinmatch is one of Supreme's rival companies.

In March, 2002, Coinmatch filed a counterclaim against Supreme ("Counterclaim"). Coinmatch alleged that its predecessor in interest had entered into a lease with the Association to install and maintain laundry equipment. Coinmatch further alleged that it was to have "exclusive control and possession" of the leased premises and that the Association could not, during the term of the lease, "install, use or permit any other person, tenant, firm, or business to install or use any laundry equipment" in the premises rented to Coinmatch. The Counterclaim stated that on May 4, 2000, the Association notified Coinmatch that it was canceling Coinmatch's lease, effective immediately, for Coinmatch's failure to pay rent.

The Counterclaim was solely against Supreme and was stated in three counts: (1) a Declaratory Judgment for Possession; (2) Trespass to Land; and (3) Trespass to Chattels. Upon receiving the Counterclaim, Supreme forwarded it to Hartford and requested that Hartford provide a defense. On April 8, 2002, Hartford informed Supreme that it was denying any coverage and duty to defend under the CGL Policy or the Umbrella Policy. In September, 2004, Coinmatch filed an amended counterclaim ("Amended Counterclaim"). Supreme again forwarded it to Hartford with a renewed request that Hartford defend.

In January, 2005, Hartford again denied any obligation to provide coverage or to defend any aspect of the Amended Counterclaim.

## II. DISCUSSION

### A. Rule 12(c) Standard

Rule 12(c) permits a party to move for judgment after the parties have filed the complaint and the answer. Fed.R.Civ.P. 12(c). On a Rule 12(c) motion, the Court accepts as true all well-pleaded material allegations of the non-movant. *Cagan v. Intervest Midwest Real Estate Corp.*, 774 F.Supp. 1089, 1091 n.2 (N.D.Ill. 1991). Judgment on the pleadings is appropriate when, based on the facts admitted, no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law.[1] *Cagan*, 774 F.Supp. at 1091.

### B. "Mend The Hold" Doctrine/Estoppel

Supreme argues that Hartford should not be allowed to rely on the arguments made in its Cross-Motion for Judgment on the Pleadings because Hartford offered one reason for denying coverage when it corresponded with Supreme, and another reason for denying coverage in this litigation.

In its pre-litigation correspondence with Supreme, Hartford based its refusal to defend on one set of justifications. Now, in its papers filed in this Court, Hartford argues that it has no duty to defend for entirely new reasons. Hartford now states that the "wrongful eviction" offense does not apply because Coinmatch is not a "person" within the meaning of the term in the CGL Policy. Alternatively, Hartford contends that coverage is precluded by the exclusion for liability "arising out of any breach of contract."

---

[1] Under Illinois law, which governs this dispute, construing the provisions of an insurance policy is a question of law. *Illinois Tool Works, Inc. v. The Home Indem. Co.*, 998 F. Supp. 868, 871 n.3 (N.D. Ill. 1998) (*citing Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 655 N.E.2d 842 (Ill. 1995)).

4

In arguing that Hartford should be unable to rely on these new justifications, Supreme invokes both the "Mend the Hold" Doctrine and the Illinois Estoppel rule. Supreme's arguments notwithstanding, the law in this circuit and in Illinois is clear: merely omitting a defense in a letter denying coverage does not constitute a waiver of the defense. *See Loyola University of Chicago v. Humana Ins. Co.*, 996 F.2d 895, 901 (7th Cir. 1993); *Tobi Engineering, Inc. v. Nationwide Mut. Ins. Co.*, 574 N.E.2d 160, 162 (Ill. App. Ct. 1991) ("[A]n insurer is not required to assert all of its defenses to liability in a letter to its insured."). In sum, I will consider the arguments Hartford makes in its papers as properly preserved.

### C. Duty to Defend

Under Illinois law, an insurer's duty to defend its insured is much broader than its duty to indemnify its insured. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1220 (Ill. 1992). Further, "[a]n insurer may not justifiably refuse to defend an action against its insured unless it is *clear* from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage. *U.S. Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991) (emphasis in original). In addition, "[t]he underlying complaints and the insurance policies must be liberally construed in favor of the insured . . ..[and] [a]ll doubts and ambiguities must be resolved in favor of the insured." *Id.* That said, "Where a policy provision is clear and unambiguous, its language must be taken in its plain, ordinary and popular sense." *Id.* (internal quotations omitted). It is with these principles in mind that I must endeavor to determine whether Hartford had a duty to defend Supreme against Coinmatch's counterclaims.

5

I find that the term "person" refers to natural persons only. Accordingly, Hartford did not have a duty to defend Supreme. Both sides agree that no Illinois court has construed the term "person" in the context relevant here. However, Supreme points to a California case that is directly on point. *See Mirapad, LLC v. California Ins. Guarantee Ass'n*, 34 Cal.Rptr.3d 136 (Cal. Ct. App. 2005). The *Mirapad* court construed a policy nearly identical to the one at issue here and determined: "[a]s the policy repeatedly uses the words 'person' and 'organization' separately and distinctly, these two words must be accorded their separate and distinct meanings." *Mirapad*, 34 Cal Rptr.3d at 144. Similarly, in the CGL policy at issue here, the terms "person" and "organization" are often coupled together, thus suggesting that when the policy's drafters wanted to refer to both persons and organizations, they would list both terms. Accordingly, when the term "person" is used in isolation—i.e., without the term "organization" also being included—it refers only to a natural person. The "personal and advertising injury" section refers only to "person" and does not also include "organization." Therefore, I find that the drafters meant to refer only to natural persons. Since Coinmatch is not a natural person, Hartford is correct in asserting that it had no duty to defend Supreme against the Counterclaim or the Amended Counterclaim.

I concede Illinois courts employ various platitudes stating that all ambiguities should be decided against the insurer. Nevertheless, the fact remains that the rules of contract interpretation still apply. *See Zurich Ins. Co. v. Raymark Industries, Inc.*, 514 N.E.2d 150, 162 (Ill. 1987) ("An insurance contract must . . . be interpreted from an examination of the complete document and not an isolated part."). Moreover, California courts recognize similar platitudes regarding the duty to defend. *See Gray v. Zurich Ins. Co.*, 419 P.2d 168, 176 (Cal. 1966)

6

(holding that an insurer "must defend a suit which Potentially seeks damages within the coverage of the policy"). Yet in *Mirapad*, the court reached its well-reasoned conclusions despite these precatory statements. In addition, at least two federal courts have followed *Mirapad's* reasoning. *See In re Captain Blyther's, Inc.*, 152 Fed.Appx. 669, 670 (9th Cir. 2005); *ABM Industries, Inc. v. Zurich American Ins. Co.*, No. 05 C 3480, 2006 WL 2595944, at *20 (N.D.Cal. Sept. 11, 2006).

Since I determine that the term "person" refers to natural persons only, and thus Hartford did not have a duty to defend, I need not consider Hartford's alternative arguments. In addition, since Hartford's denial of coverage was proper, I am dismissing Supreme's Count III for an award under Section 155 of the Illinois Insurance Code.

## III. CONCLUSION

Supreme's Motion for Judgment on the Pleadings is denied. Hartford's Cross-Motion for Judgment on the Pleadings is granted. Count III of Supreme's complaint is dismissed.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: March 13, 2007